FILED
2017 Dec-01 PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**ALEXANDRA BRASHEAR,**

Plaintiff,

v.

**MS INDUSTRIES II, LLC,**

Defendant.

CIVIL ACTION FILE

**DEMAND FOR JURY TRIAL**

**COMPLAINT**

1. This action for injunctive relief, compensatory and punitive damages, costs and attorneys' fees is brought pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111 *et seq.* (hereinafter "ADA") to redress discrimination against Plaintiff based on her disability, including the termination of her employment, failure to accommodate, harassment and retaliation against her. Plaintiff also brings a claim under the laws of the State of Alabama for the tort of intentional infliction of emotional distress.

JURISDICTION AND VENUE

2. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a) (4). This Court has supplemental jurisdiction over Plaintiff's state claims

pursuant to 28 U.S.C. § 1367 because the claims are so related to Plaintiff's ADA claim that they form a part of the same case or controversy.

3. Venue is proper in this Court under 28 U.S.C. § 1391 as this is a judicial district in which the Defendants reside and in which a substantial part of the events and omissions giving rise to the claims occurred. Venue is also proper in this Court under 42 U.S.C. § 2000e-5 (f) (3), which is applicable to the ADA, because the acts and practices complained of by Plaintiff, occurred in this district and division.

PARTIES

4. Plaintiff Alexandra Brashear is a resident of Fulton County, Georgia who was employed by Defendant MS Industries II, LLC. She worked in Georgia and Alabama during her employment with Defendant from 2011 until her discharge on or around July 5, 2016.

5. Defendant MS Industries II, LLC ("MS Industries") is a domestic limited-liability corporation incorporated in Alabama with a principal place of business in Town Creek, Alabama. The nature of Defendant's business is to extract, separate, and process mineral resources.

6. Defendant is now, and at all times relevant hereto, has been an employer in an industry affecting commerce within the meaning of the ADA, 42 U.S.C. §12111, and has employed more than the requisite number of persons for the requisite duration under the ADA.

CONDITIONS PRECEDENT

7. Plaintiff has fulfilled all conditions precedent to institution of this action. She filed timely a charge with the Equal Employment Opportunity Commission and is filing this Complaint within ninety (90) days after receiving a Notice of Right to Sue.

STATEMENT OF FACTS

**Plaintiff's Position with Defendant**

8. Plaintiff commenced working part-time during 2011 for Defendant and worked continuously for Defendant until July, 2016.

9. Although Plaintiff was an employee of Defendant, throughout her employment, Defendant treated Plaintiff as an independent contractor for purposes of government accounting and taxation, issuing a Form 1099 with no taxes withheld from funds

or employer contributions made to the state or federal government.

10. For a period of time Defendant paid all salaried and hourly employees on the basis of 1099 independent contractors.

11. At no time was Plaintiff an "independent contractor" within the legal meaning of the term under various Federal and Alabama laws and regulations governing application of the term.

12. Plaintiff was employed as an executive or personal assistant to President Steven Smith, carrying out tasks related to bookkeeping, payroll accounting, coordinating expenses, payment of invoices, preparing customer documents, and assisting with start-up activity of Defendant as a new enterprise.

13. Throughout her employment, Plaintiff's duties also included tasks of personal assistance to Mr. Smith and his family. The delineation between Plaintiff's duties as an employee of Defendant and tasks for Mr. Smith and his family became increasingly distorted early on and continued to the end of her employment.

14. During her initial employment, Plaintiff lived in Atlanta and commuted to Wolf Springs, Alabama on alternating weeks which required a drive of more than 250 miles each way.

15. At Defendant's request, Plaintiff then began living in Alabama during weekdays, first residing with Defendant's President Steven Smith and his daughter, Shelly Smith, in a cramped trailer on Defendant's property, and then in an apartment provided by Defendant where Plaintiff and Smith's daughter Shelly resided.

16. During the week, in addition to her responsibilities for Defendant, Plaintiff was required to perform many additional time-consuming personal tasks for the family of Defendant's President, Steven Smith.

17. Plaintiff continued to reside in Atlanta on weekends and was required to perform tasks benefitting Mr. Smith, such as delivering gifts, checks, and objects from Mr. Smith to his personal companion Melissa Wilson, baby-sitting for Ms. Wilson's child, and caring for her pets. On one occasion, Plaintiff maintained the Smith home in Atlanta and cared for four children in Atlanta while Mr. Smith and his wife celebrated an anniversary.

18. Plaintiff's work location alternated between Atlanta and Alabama, depending on the needs and the direction of President Steven Smith. She often performed company tasks

remotely from Atlanta while carrying out personal tasks for Steven Smith.

19. The demands of Mr. Smith that Plaintiff be available for weekend and after-hours tasks meant that she generally worked up to and beyond eighty (80) hours each week performing assignments for Defendant and carrying out personal tasks for Mr. Smith.

**Plaintiff's Disability and Defendant's Failure to Accommodate**

20. Plaintiff was diagnosed with multiple sclerosis during 2010 when she was a college student.

21. Plaintiff was forthright in communicating her medical condition throughout her employment with Defendant.

22. During April, 2015, Plaintiff was absent from work to receive chemotherapy (LEMTRADA) treatments that lasted some eight (8) hours each day.

23. Two months prior to the termination of her employment, during May, 2016, Plaintiff was required to undergo a second round of chemotherapy for three (3) days.

24. During the week prior to chemotherapy, Plaintiff worked almost eighty (80) hours performing job duties and tasks for the family of Defendant's President.

25. While undergoing actual chemotherapy treatment, sitting in the hospital, Plaintiff was required to perform various work tasks. For example, she initiated bank wires, initiated payroll information, corresponded with Defendant's employees and contractors, corresponded with banks, and performed a variety of administrative functions.

26. Throughout her recuperation period, Plaintiff was required to perform various work tasks such as paying all Defendant's invoices, administering the various payrolls, initiating bank wires, exchanging express package deliveries of documents with Defendant's office, and corresponding with vendors and co-workers.

27. On or about June 4, 2016, Plaintiff resumed the schedule of traveling from Atlanta to Alabama on a weekly basis to perform job duties for Defendant and various tasks for the Smith family.

28. A typical work week for Plaintiff during the last month of her employment involved ten (10) or more hours per day of work assignments and personal tasks for the Smith family.

29. On or about May 2016, only two (2) weeks after the chemotherapy and despite Plaintiff still being in recovery,

Steven Smith directed Plaintiff to maintain his family home and take care of pets while his family traveled on vacation.

30. Plaintiff was assigned responsibility for implementing a large celebration at Defendant's President's family home in Alabama on July 4, 2016. Plaintiff commenced work at 6 a.m. that day and did not complete tasks at the home of Steven Smith until late that evening, working some sixteen (16) hours on the national holiday.

31. Only a few hours after she completed work on July 4, early on July 5, Smith texted Plaintiff directing that she provide him a calculation of checking account balances.

32. Plaintiff telephoned Steven Smith early on July 5, 2016 to report that she was physically exhausted and needed to be absent from work in order to obtain medical care for her debilitated condition.

33. Steven Smith responded to Plaintiff that he could not have her absent that day because his family needed her assistance. Mr. Smith declared that Plaintiff needed to get it together and report to work that day, or get out. Smith told Plaintiff "she needed to get her shit together or get out."

34. When Plaintiff visited her physician on July 5, she registered at more than ten (10) pounds below her customary weight.

35. Defendant refused to consider Plaintiff's request for time off as an accommodation and did not engage in any interactive process to determine if an accommodation was warranted.

**Defendant's Harassment of and Retaliation Against Plaintiff for Seeking an Accommodation and the Unlawful Termination of Her Employment**

36. As soon as Plaintiff notified Defendant that she needed accommodation, Defendant commenced a pattern of mental harassment and retaliation.

37. Although July 5 was the first time that Plaintiff's disability caused her to be unable to perform any job tasks for Defendant, Steven Smith and his wife expressed irritation that Plaintiff was not available to them that day to book personal vacation and travel arrangements to Italy for the Smith family.

38. Although Plaintiff had not called in sick during a long time period, Steven Smith reacted by verbally assaulting Plaintiff regarding what he claimed were "mental problems."

39. Smith callously suggested that the medical difficulties Plaintiff endured were mental and that Plaintiff merely needed a good anti-depressant. Upon learning that Plaintiff needed time off from work, Smith threatened to contact Plaintiff's mother to discuss having Plaintiff institutionalized in a mental health facility.

40. On information and belief, after learning that that Plaintiff needed time off from work, Smith described Plaintiff as a "stupid bitch" to another employee.

41. Although earlier he had promised to continue Plaintiff's healthcare insurance coverage, Smith threatened Plaintiff that he would cut off healthcare coverage.

42. Even though Defendant understood that Plaintiff depended on healthcare insurance protection, Defendant cancelled her insurance five (5) days after her termination.

43. Plaintiff did not work for Defendant after July 5, 2016 because her employment was effectively terminated by Defendant's statements on that day that Plaintiff needed to get it together and report to work that day or get out and Smith's statements that "she needed to get her shit together or get out."

**Defendant's Retaliation Against Plaintiff After Notification that Plaintiff Intended to File an EEOC Charge**

44. Upon learning that Plaintiff intended to file a charge of disability discrimination with the Equal Employment Opportunity Commission, Mr. Smith texted her with a threat declaring "unless you want to go to prison I'll suggest you go about your business" and that this "will lead you right to jail . . . have it your way."

45. During the past year since her termination, on numerous occasions Defendant has relayed threats of criminal action against Plaintiff through members of the family of Defendant's President.

**Additional Facts**

46. As a result of Defendant's discrimination against her based on her disability, including failure to accommodate and the termination of her employment, and Defendant's harassment of and retaliation against Plaintiff, Plaintiff suffered severe emotional distress, including, but not limited to, agitation, sleeplessness, frustration, anger, irritation, depression, despondency, nervousness, pain, humiliation, degradation, feelings of helplessness, lack of confidence, and difficulties

in other personal relationships. Plaintiff also suffered other past and future pecuniary and non-pecuniary losses.

47. Defendant acted willfully and with malice, wantonness, oppression, and/or reckless indifference to Plaintiff's federally-protected rights and the consequences of its actions and failures to act.

CAUSES OF ACTION

**COUNT I (Discrimination Based on Disability and Failure to Accommodate in Violation of the Americans with Disabilities Act)**

48. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 47 of this Complaint.

49. At all times relevant to this action, Plaintiff was a qualified individual with a disability as defined in the ADA.

50. Plaintiff's physical impairment, multiple sclerosis, substantially limits the major life activity of neurological function, as recognized in the EEOC's Regulations, 29 C. F. R. 1630.2(j) (3) (iii).

51. Plaintiff was discriminated against on the basis of her disability when Defendant refused to allow Plaintiff to be absent from work due to her disability and effectively

terminated her employment by telling her she needed to report to work or get out and that "she needed to get her shit together or get out."

52. When Plaintiff requested the accommodation of time off due to her disability, Defendant refused to accommodate Plaintiff and did not engage in the interactive process regarding reasonable accommodation.

53. After Plaintiff requested time off from work due to her disability, Defendant discriminated against Plaintiff based on her disability by harassing Plaintiff including by suggesting she had mental problems.

54. The termination of Plaintiff's employment and harassment of her for requesting time off from work due to her disability were because Defendant regarded Plaintiff as disabled, because of Plaintiff's actual or perceived disability.

55. Defendant violated the ADA and is liable to Plaintiff for compensatory and punitive damages resulting from this violation.

**COUNT II (Retaliation)**

56. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 55 of this Complaint.

57. Plaintiff was retaliated against when Defendant refused to allow Plaintiff to be absent from work due to her disability and effectively terminated her employment by telling her she needed to report to work or get out and that "she needed to get her shit together or get out."

58. As soon as Plaintiff notified Defendant that she needed accommodation, Defendant commenced a pattern of retaliation, including verbal harassment.

59. Upon learning that Plaintiff intended to file a charge of disability discrimination with the EEOC, Defendant threatened to file criminal charges against Plaintiff.

60. Defendant's actions constitute retaliation under the ADA, 42 U.S.C. §12203, as they were designed to "coerce, intimidate, threaten or interfere" with Plaintiff "in the exercise or enjoyment of . . . any right granted or protected" by the ADA.

61. Defendant is liable to Plaintiff for retaliation in violation of the ADA.

**COUNT III (Intentional Infliction of Emotional Distress)**

62. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 61 of this Complaint.

63. The repeated harassment of Plaintiff by Mr. Smith and the retaliation against Plaintiff was extreme and outrageous, undertaken intentionally, and caused Plaintiff severe emotional distress.

64. Defendant is liable to Plaintiff for intentional infliction of emotional distress because it knew or should have known about the conduct of Smith, Defendant's President, but failed to take action to stop and/or prevent the harassment and retaliation.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

(a) Declare that the acts and practices complained of herein are in violation of the ADA;

(b) Enjoin Defendant from engaging in such conduct in the future;

(c) Direct Defendant to make Plaintiff whole for all earnings, including fringe benefits, that Plaintiff would have received but for Defendant's unlawful discrimination and retaliation;

(d) Direct Defendant to reinstate Plaintiff to a suitable position, or in the alternative, to pay Plaintiff her lost future earnings and other benefits.

(e) Award to Plaintiff the maximum punitive and compensatory damages allowable;

(f) Award to Plaintiff and against Defendant general, compensatory, and punitive damages under the laws of the State of Alabama for her claims of intentional infliction of emotional distress in amounts to be determined at trial but not less than a total Five Hundred Thousand Dollars ($500,000);

(g) Award to Plaintiff and against Defendant her costs and attorneys' fees incurred in the prosecution of this action;

(h) Award to Plaintiff and against Defendant pre-judgment and post-judgment interest; and

(i) Grant such other and further relief as this Court deems just and proper.

DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Respectfully submitted,

A. McArthur Irvin
Georgia Bar No. 384300

IRVIN BOWEN HALE-SMITH LLC
Two Buckhead Centre, Suite 225
2970 Peachtree Road
Atlanta, GA 30305
(404)237-5075
(404)364-4550

Counsel for Plaintiff

[Pursuant to Local Rules, Counsel for Plaintiff will apply for *pro hac vice* status shortly after filing complaint]